IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL ACTION |
| | : NO. 25-341-01 |
| MICHAEL SAGGINARIO | : |

SCHMEHL, J.                                    **MEMORANDUM**                                    NOVEMBER /3 2025

On July 15, 2025, following the execution of a search warrant at Defendant's residence, Defendant was charged by complaint with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On July 21, 2025, a bail hearing was held before United States Magistrate Judge Carol Sandra Moore Wells. Following the hearing, Magistrate Wells found that Defendant posed a danger to the community and ordered him detained. On August 13, 2025, Defendant was charged in a superseding indictment with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. 922(g)(1). Presently before the Court is the Defendant's motion for bail. The Court held a hearing on November 5, 2025. For the reasons that follow, the motion is denied.

This court exercises *de novo* review over the detention order entered by the magistrate judge. *See United States v. Delker,* 757 F.2d 1390, 1393–95 (3d Cir.1985). The burden of persuasion remains with the government and the government must demonstrate by a preponderance of the evidence that the defendant is a flight risk or show by clear and convincing evidence that he is a danger to others. 18 U.S.C. § 3142(f); *see United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986); *United States v. Charga*, 850 F. Supp. 354, 357 (W.D. Pa. 1994).

In evaluating if the government has met its burden, courts conduct an individualized assessment and weigh the evidence in light of the four factors set forth in 18 U.S.C. § 3142(g), i.e.:

1

> (1) the nature and circumstances of the offense charged [...];
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). After making a *de novo* review of the record and after considering the factors under 18 U.S.C. § 3142(g), the Court finds the government has shown, by clear and convincing evidence, that Defendant presents a danger to the community. The Court now discusses each of the § 3142(g) factors, in turn.

First, the nature and circumstances of the offense weigh in favor of Defendant's detention as the instant offense is extremely serious. Upon executing a search warrant at Defendant's residence at 4 North Street, Roseto, Pennsylvania (the "Residence"), law enforcement officers discovered and seized multiple firearms. In addition to seizing the weapon that is the subject of this indictment, a fully loaded Rohm revolver pistol that was found in an adult-sized backpack in the first-floor dining/living room area, the officers seized two semi-automatic firearms (an AR-style rifle and an AK-style rifle) and a pistol from Defendant's bedroom. The officers also seized 30 rounds of Barnaul ammunition[1] from the AK-style firearm as well as material used for 3D-printing. A cursory search of Defendant's cellphone revealed "a photograph believed to be from

---

1 Barnaul is a Russian ammunition manufacturer that produce a wide variety of steel-cased cartridges for civilian and military use.

February of 2025 depicting a person who appears to be the defendant holding what appears to be a brown-colored bolt action hunting rifle with a bayonet affixed to the barrel of the rifle. Also located on the phone's camera roll were numerous images . . . of firearms, a 3D-printer in the process of printing a lower receiver, a 3D-printed 40mm launcher, a 3D-printed AR lower receiver, a digital blueprint of an AR lower receiver, a digital blueprint of a 'roller-delayed belt-fed carbine,' miscellaneous firearms parts, and miscellaneous hunting rifles and boxes of ammunition on the tailgate of a vehicle." ECF 37, p. 3. If convicted, the Defendant faces a statutory maximum term of imprisonment of 15 years.

The Court is particularly concerned that the Defendant who is 45 years old is the father of, and primary care-giver for, four young children, ages 16, 11, 8 and 5, all of whom live with him and their mother, Veronica, at the Residence. The youngest child has special needs. Defendant is a stay-at-home Dad while Veronica is away 12 hours a day at her job as a court security officer for the New York State Court system. The firearms and ammunition the officers discovered, as well as Veronica's service revolver, were scattered haphazardly throughout the Residence and were all unsecured and within the reach of the children. Any of Defendant's four children could have easily accessed any of these weapons, possibly resulting in a tragedy. Obviously, the presence of his four children in the Residence did not dissuade him from possessing these dangerous weapons and failing to secure them. The entire scenario is indicative of extreme recklessness on the part of Defendant and his wife.

On July 17, 2025, the Northampton County Children & Youth Social Services Agency contacted the Defendant and his wife by mail, advising them they were under investigation for suspected child abuse based on the items seized from the Residence. Defendant's Exhibit 1. Although the reports of suspected child abuse were ultimately found to be unsubstantiated, the Court notes that at the time Defendant and his wife were cleared on September 15, 2025, there were no longer any firearms present at the Residence. Altogether, the serious nature and

3

circumstances of the offense weigh in favor of the Defendant's detention.

Second, while Defendant is presumed innocent of the instant offense, it appears that the weight of the evidence against him is strong. *See* 18 U.S.C. § 3142(g)(2). There does not appear to be any dispute that Defendant is a convicted felon. The fully-loaded Rohm revolver pistol was discovered in an adult-size backpack in the first floor dining/living room area of the Residence. Defendant was the only adult in the Residence at the time of the search. The backpack contained a symbol of Thor's hammer that was also present on a necklace the Defendant was wearing at the time of the search. The 30 rounds of Barnaul ammunition were seized from the AK-style firearm discovered in Defendant's bedroom. Besides contending that he is a collector of military memorabilia and religious symbols, Defendant has otherwise not previewed any defenses to the charge at this point. Therefore, the Court finds that this factor overwhelmingly favors detention.

Third, the evidence of Defendant's history and characteristics also supports his detention. *See* 18 U.S.C. § 3142(g)(3)(A). The Defendant's criminal history, while somewhat aged, is nevertheless relevant.

In 1995, when Defendant was 16 years old, he was convicted in the Eastern District of New York of placing an explosive device at a wind-shear alert system at an airport in Flushing, New York, causing $20,000 in damage. Defendant was sentenced to four years of federal probation.

In March of 2000, the Defendant was arrested by ATF and later indicted in the Eastern District of New York for possessing a .38 caliber handgun and two unregistered firearms silencers. Defendant pled guilty to unlawful receipt of an unregistered firearm and was sentenced to a term of imprisonment of 27 months to be followed by a 3-year term of supervised release.

In 2002, the United States Probation Department conducted a search of Defendant's residence and discovered white supremacist materials that he was prohibited from possessing by the terms of his probation. A search of Defendant's computer revealed numerous digital images

of him wearing Nazi regalia and one digital image in which he is depicted holding a Mossberg 500 shotgun.

In 2007, Defendant filed a motion in the United States District Court for the Eastern District of New York to have his criminal record quashed but his request was denied.

Also in 2007, records received from eBay revealed that Defendant had purchased, using Veronica's credit card, a .45 caliber barrel and grip safe for a Colt model 1911 handgun as well as a holster, two magazine pouches, a tactical hip extender, and a handgun belt.

In July of 2008, Defendant voluntarily made a proffer to the Federal Bureau of Investigation. Defendant detailed how he made the explosive device he placed at the Flushing Airport in 1995. He also advised that while on probation for the explosive device in the late 1990s he knew he was under federal investigation and subject to the search of his home. As a result, he "began to remove any evidence of bomb making material from his home by concealing fuses, grenades and black powder inside Pepsi cans, and tossing the evidence into street sewers whenever he left his home." Defendant's Exhibit 2.

Upon being informed by the interviewing agent that Defendant had recently purchased gun parts on eBay in 2007, Defendant stated that he ordered the parts to assist a friend repairing a firearm and that he was not in possession of a firearm. Defendant was advised that if he was in possession of a firearm he would be prosecuted. Defendant acknowledged this warning and again stated that he was not in possession of a firearm. *Id.*

To his credit, Defendant has no further convictions since his probation ended in 2004. However, in 2020, a social media provider made a voluntary disclosure to the FBI which revealed that Defendant had purchase numerous firearms-related materials and had them shipped to the Residence. Also revealed were numerous purchases for 3D-printing materials Defendant made from DEFCAD which markets itself as "[t]he world's largest 3D gun repository." ECF 37, pp. 7-8.

At the hearing on November 5, Defendant called two witnesses, Alison Erion and David Schaffer. Both generally testified that Defendant is the President and spiritual leader of the Irminfolk Odinist Community, a nonprofit religious organization based in Upstate New York. They testified that although they were aware that Defendant is a convicted felon, they have never seen him display or champion any act of violence at any of the Irminfolk religious celebrations. To the contrary, they testified that Defendant is a role model to the children who attend the gatherings, including, among others, Defendant's own children and one of Mr. Schaffer's children who has autism. Both Ms. Erion and Mr. Schaffer testified that they have never seen Defendant display any racist or hateful rhetoric or images at the religious celebrations. Ms. Erion admitted that although she had been to Defendant's home, she had not seen all the rooms in the home. She testified that the only firearm she ever saw in the home was what appeared to be a vintage rifle. Mr. Schaffer admitted that he had never been to Defendant's home and therefore could not be aware of any firearms in the home. Both witnesses testified that Defendant is adept at metalwork and has made several metallic symbols for the Irminfolk. Both witnesses testified that Defendant made three life-size religious statutes, one of which was made by Defendant on a 3D-printer.

The Defendant also submitted several character references, including from his mother, wife, in-laws and others that essentially describe him as a doting father to his four children and therefore not a risk of flight. Christopher Hatfield writes in a letter dated November 2, 2025, that the rocket launcher being fired by Defendant in the photo obtained from Defendant's phone is an "inert (non-firing) replica of a World War Two rocket launcher. The term for the item is a Panzerschreck. There is a picture of [Defendant] holding this replica and a bottle rocket was launched from it . . .in a direction that could not harm a person or property."

Although he has no recent convictions, Defendant has always been aware of his status as a convicted felon, a status that he knows specifically prohibits him from possessing any firearm.

Yet, despite this admonition, Defendant continues to find himself in pursuit. whether from DEFCAD or other sources, of firearms, firearms parts and ammunition. And in this latest episode, Defendant failed to secure any of the firearms in the Residence, thereby exposing his children and others to great danger. Neither detention nor probation has deterred Defendant from illegally possessing firearms. As a result, the Court is not convinced that if Defendant were released to home confinement, he would refrain from illegally possessing firearms.

Fourth, and most significant, Defendant's release poses a danger to the community. The Court has already detailed the scene at the Residence in which the firearms were discovered, The fact that Defendant also used a 3D-printer at the Residence to print firearm–related parts only adds to the Court's apprehension. Misuse of unsecured dangerous firearms can obviously lead to devastating effects on a community, including loss of life, loss of jobs and loss of the family as a social unit.

For the reasons detailed herein, the Court concludes that the government has proven by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released pending trial. Accordingly, Defendant's motion for bail is denied.