**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **CRIMINAL ACTION** |
| | : | **NO. 25-341-01** |
| **MICHAEL SAGGINARIO** | | |

# MEMORANDUM

**SCHMEHL, J.** **SEPTEMBER 3, 2026**

On July 15, 2025, following the execution of a search warrant at Defendant's residence, Defendant was charged by criminal complaint with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[1] On August 7, 2025, Defendant was indicted by a grand jury on one count possession of a firearm (Rohm revolver pistol) and ammunition (approximately 30 rounds of Barnaul ammunition) by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On August 13, 2025, Defendant was charged in a superseding indictment with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. 922(g)(1). Presently before the Court is the Defendant's motion to dismiss Count One of the Superseding Indictment. The Court heard oral argument on the motion on August 19, 2026. For the reasons that follow, the motion is denied.

Defendant argues that § 922(g)(1), which prohibits a felon from possessing firearms, is unconstitutional as applied to him under the Second Amendment of the United States

1 Authorities seized multiple firearms from the Defendant's residence, including two loaded semi-automatic firearms and a pistol that were seized from the Defendant's bedroom he shared with his wife. Two additional pistols were seized from the house. One of these was a Rohm revolver pistol, which was fully loaded with six rounds and discovered in an adult-size backpack in the first-floor kitchen/living room area. None of the firearms were secured, put in a safe, or kept out of reach of children. The government also seized numerous rounds of ammunition, including about 30 rounds of Barnaul ammunition from the AK-style firearm. Although Defendant shares the residence with his wife, Defendant was the only adult individual at the residence at the time of the search.

Constitution.[2] An as-applied challenge to a statute "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

In *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court established a two-part test for determining the constitutionality of a law under the Second Amendment. The Court must first discern whether the Defendant is a part of the "people" protected by the Second Amendment and whether the statute "regulates Second Amendment conduct." *Id*. at 24. If so, then the "government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*.

In *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc) (*Range II*), our Court of Appeals established that an individual who has a felony conviction, such as Defendant, remains among "the people" protected by the Second Amendment. *Id.* at 228. *See also United States v. Walters,* 151 F. 4th 122, 133 (3d Cir. 2025). The Court of Appeals also found that § 922(g)(1) regulates Second Amendment conduct. *Range II* at 228.

Having determined that Defendant is one of the people protected by the Second Amendment despite having a prior felony conviction and that § 922(g)(1) regulates Second Amendment conduct, the Court must next consider whether the Government has shown that applying § 922(g)(1) to Defendant would be "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. In answering this question, the Court must determine whether the Defendant "present[s] a special danger of misus[ing firearms]," *United States v. Rahimi*, 602 U.S. 680, 698 (2024), and would likely pose an increased risk of "physical danger to

---

2 The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

others" if armed, *Range II*, 124 F.4th at 232. *See also, United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) ("[O]ur nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous.")

In making this determination, the Court is guided by the following directive given by our Court of Appeals in *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025):

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament. As *[Range v. Attorney General*, 124 F. 4th 218 (3d Cir. 2025) (*"Range //"*),] illustrated, consideration of intervening conduct plays a crucial role in determining whether application of § 922(g)(1) is constitutional under the Second Amendment. *See* 124 F.4th at 232. Indeed, such conduct may be highly probative of whether an individual likely poses an increased risk of "physical danger to others" if armed. *Id.*

*Pitsilides*, 128 F.4th at 212. *See also Walters,* 151 F. 4th at 135 ("Based on our precedent, we evaluate the individual's criminal history before deciding whether § 922(g)(1) has been unconstitutionally applied."). Further, the Court of Appeals in *Pitsilides*, observed that "both history and common sense reflect that this 'dangerousness' includes not only direct involvement in physical violence" but also conduct that is "'dangerous because [it] often lead[s] to violence,'" such as burglary and drug dealing. *Id.* at 213 (quoting *Folatjar v. Att'y Gen.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659). This assessment "necessarily requires individualized factual findings." *Id.*

Upon a review of the Defendant's entire criminal history along with the conduct giving rise to his predicate offense, the Court concludes that Defendant qualifies as a "dangerous" individual that Congress may seek to disarm.

In March of 2000, the Defendant was arrested by the Bureau of Alcohol, Tobacco and

Firearms ("ATF") and later indicted in the Eastern District of New York for possessing a .38 caliber handgun and two unregistered paintball silencers. Defendant pled guilty to unlawful receipt of an unregistered firearm under the National Firearms Act, in violation of Title 26, United States Code, Sections 5861(d) and 5871.and was sentenced to a term of imprisonment of 27 months to be followed by a 3-year term of supervised release.

Defendant's post-conviction conduct is consistent with dangerousness. For example, in 2002, the United States Probation Department conducted a search of Defendant's residence and discovered white supremacist materials that he was prohibited from possessing by the terms of a prior period of probation. A search of Defendant's computer revealed numerous digital images of him wearing Nazi regalia and one digital image in which he is depicted holding a Mossberg 500 shotgun. In 2005, according to court records, the Defendant pled guilty to probation violations and was resentenced to one day of imprisonment and 364 days of supervised release.

In 2007, Defendant filed a motion in the United States District Court for the Eastern District of New York to have his criminal record quashed but his request was denied.
Also in 2007, records received from eBay revealed that Defendant had purchased, using his now wife's credit card, a .45 caliber barrel and grip safe for a Colt model 1911 handgun as well as a holster, two magazine pouches, a tactical hip extender, and a handgun belt. While these items may be considered as lawful purchases, given the Defendant's history, they also could be used for unlawful purposes.

In July of 2008, Defendant voluntarily made a proffer to the Federal Bureau of Investigation ("FBI"). Defendant advised that while on his previous period of probation, he knew he was under federal investigation and subject to the search of his home. As a result, the Defendant stated that he began to remove any evidence of explosive material from his home by concealing fuses, grenades and black powder inside Pepsi cans, and tossing the evidence into street sewers whenever he left his home.

Upon being informed by the interviewing agent that Defendant had recently purchased gun parts on eBay in 2007, Defendant stated that he ordered the parts to assist a friend repairing a firearm and that he was not in possession of a firearm. Defendant was advised that if he was in possession of a firearm he would be prosecuted. Defendant acknowledged this warning and again stated that he was not in possession of a firearm. *Id*.

In 2020, the social media provider Meta made a voluntary disclosure to the FBI which revealed that the Defendant was seeking operation instructions for a destructive device, and that Defendant claimed to be in possession of numerous firearms and in the process of constructing a "mortar."

After that, records obtained pursuant to search warrants and obtained through legal process revealed that the defendant had purchased numerous firearms-related items and had them shipped to his residence, including:

• Lot of 4 New 1911 & Clones 1911A1 BLUED Grip Screw Bushings MADE IN THE USA! (14 January 2020)

• 1911 Plunger Tube Spring Full Size Government 45 ACP – New (18 February 2020) • 1911 45 Black Warrior 3 Dot Sights Part#4565B (28 February 2020)

• Rock Island Armory 5" Full Size 1911Slide .45 ACP Ext Dbl Wide Serrations SF (10 April 2020).

• X400V-IR Weaponlight LED White Light & IR Laser Infrared– Output Red Laser Sight (21 April 2020) • DURAGRIPS - Colt Kimber Taurus RIA S&W Sig 1911 Full Size Grips - WASP NEST (24 April 2020)

• 1911 Thread Protector 37/64 x 28 .578 x 28 USA Made Free Shipping #4176 (27 April 2020)

• Flambeau Small Pistol Handgun Gun Hard Protective Case Airline TSA Tan 1109HD-T (29 April 2020)

• Umarex RWS Model 3500 .22 Caliber Wood Stock Air Rifle (Refurb) (5 May 2021)

• JSB MATCH DIABOLO EXACT JUMBO .22 CALIBER PELLETS 250 EA 15.89 grain DOMED (8 May 2021)

• Tin Ingots, 1LB of 96% TIN. Pewter, Jewelry, Hobbies, Reloading, Casting (12 August 2021)

• LEE Mold single Cavity bullet Mold 230 Grain Bullet Mold 45 ACP (21 August 2021).

Defendant also searched online for a variety of firearms and ammunition related topics, purchased 3D printing materials, and received numerous marketing emails from DEFCAD, a 3D gun depository.

Although he has no recent convictions and there is no evidence that Defendant has made any specific threats or exhibited violent conduct, Defendant has always been aware of his status as a convicted felon, a status that he knows specifically prohibits him from possessing any firearm. Yet, despite this admonition, Defendant continues to find himself in pursuit of firearms, firearm parts and ammunition. And in this latest episode, numerous firearms were seized from Defendant's home, including semi-automatic weapons. To make matters worse, Defendant failed to secure any of the loaded firearms in his home, thereby exposing his children and others to great danger.

Defendant argues that his situation is not meaningfully different from that of Bryan Range in *Range II* where the Court of Appeals found that the government could not disarm Range. Range had a thirty-year-old conviction for food-stamp fraud that was followed by little to no interaction with law enforcement. *Range II*, 124 F.4th at 224. Range wanted to possess a hunting rifle and a shotgun for home defense, so he sought a declaration that § 922(g)(1) violates the Second Amendment as applied to him. In finding that disarming Range violated the Second

Amendment, the Court nevertheless emphasized that its decision was a "narrow one," based on Range's individual circumstances and the lack of any sign that "Range poses a physical danger to others." *Id.* at 232.

Defendant, on the other hand, is being charged with being a felon in possession of a firearm after having already plead guilty to possession of an unregistered firearm in 2000. Thus, unlike Bryan Range, Defendant did not file a civil lawsuit to assert his Second Amendment claim but "knowingly violated § 922(g)(1)'s prohibition while subject to it." *See Pitsilides*, 128 F.4th at 210. In addition, Defendant's prior crime concerned possession of an unregistered firearm in violation of federal law regulating the possession and use of deadly weapons. Range's prior crime consisted of food stamp fraud which is essentially a crime of dishonesty. Therefore, Defendant's situation is meaningfully different from that of Range.

In sum, an analysis of Defendant's entire criminal history along with the conduct giving rise to his predicate offense demonstrate that Defendant is not similarly situated to Bryan Range in *Range II* and that he "present[s] a special danger of misus[ing firearms]," *United States v. Rahimi*, 602 U.S. 680, 698 (2024), and would likely pose an increased risk of "physical danger to others" if armed, *Range II*, 124 F.4th at 232. As a result, Defendant simply does not have a viable as-applied Second Amendment claim.